## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDREW KIM and | ) | |
| JONATHAN ROLLINS, | ) | Civil Action No. 2:19-cv-11185 |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CLASS AND COLLECTIVE** |
| | ) | **ACTION COMPLAINT** |
| DETROIT MEDICAL | ) | |
| INFORMATICS, LLC | ) | |
| d/b/a DMI | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Andrew Kim ("Kim") and Jonathan Rollins ("Rollins") (collectively, "Plaintiffs"), through her undersigned counsel, individually and on behalf of all others similarly situated, file this Class and Collective Action Complaint against Defendant Detroit Medical Informatics, LLC ("DMI" or "Defendant"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## PRELIMINARY STATEMENT

1.      This is an action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and Illinois, Missouri, and Massachusetts

state law, seeking payment of unpaid overtime wages. Plaintiffs, on behalf of themselves and others similarly situated, also seek liquidated damages for the failure to pay overtime wages, as well as attorneys' fees and costs.

2.     Plaintiffs allege that they and other similarly situated consultants were knowingly and improperly classified as independent contractors, and, as a result, did not receive overtime pay for hours worked in excess of forty (40) in a workweek. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

3.     Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

5.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because Defendant has its principal place of business in Detroit, Michigan, in this judicial district, and therefore a substantial part of the events giving rise to Plaintiffs' claims took place in this district.

## PARTIES

6.     Plaintiff Andrew Kim is an individual residing in Buford, Georgia.

7.     Kim worked for Defendant DMI as a consultant providing support and training to Defendant's clients in using new recordkeeping systems in Arizona, Massachusetts, Missouri, and Illinois, between September 2016 and February 2018.

8.     Pursuant to 29 U.S.C. § 216(b), Kim has consented in writing to participate in this action. *See* Ex. A.

9.     Plaintiff Jonathan Rollins is an individual residing in Aiken, South Carolina.

10.     Rollins worked for Defendant DMI as a consultant providing support and training to Defendant's clients in using new recordkeeping systems in Arizona, Missouri, and Illinois between September 2016 and February 2018.

11.     Pursuant to 29 U.S.C. § 216(b), Rollins has consented in writing to participate in this action. *See* Ex. B.

12.     DMI is a Michigan corporation which provides information technology educational services for the healthcare industry across the United States. DMI has its headquarters at 440 Barroughs St., Suite 148, Detroit, MI 48202.

13.     Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working

on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

14.    Defendant's annual gross volume of sales made or business done exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

15.    Plaintiffs bring Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following class of potential FLSA opt-in litigants:

> All individuals who worked for DMI providing training and support to DMI's clients in using electronic recordkeeping systems in the United States from April 24, 2016 to the present and did not receive overtime for hours worked in excess of 40 a week (the "FLSA Collective").

16.    Plaintiffs bring Count II of this lawsuit pursuant to Fed. R. Civ. P. 23 as a class action on behalf of themselves and the following class:

> All individuals who worked for DMI providing training and support to DMI's clients in using electronic recordkeeping systems in Missouri from April 24, 2017 to the present and did not receive overtime for hours worked in excess of 40 a week (the "Missouri Class").

17.    Plaintiffs bring Count III of this lawsuit pursuant to Fed. R. Civ. P. 23 as a class action on behalf of themselves and the following class:

> All individuals who worked for DMI providing training and support to DMI's clients in using electronic recordkeeping systems in Illinois from April 24, 2016 to the present and did not receive

overtime for hours worked in excess of 40 a week (the "Illinois Class").

18.     Plaintiff Kim brings Count IV of this lawsuit pursuant to Fed. R. Civ.

P. 23 as a class action on behalf of himself and the following class:

> All individuals who worked for DMI providing training and support to DMI's clients in using electronic recordkeeping systems in Massachusetts from April 24, 2016 to the present and did not receive overtime for hours worked in excess of 40 a week (the "Massachusetts Class").

19.     The FLSA Collective and the Missouri, Illinois, and Massachusetts

Classes are together referred to as the "Classes."

20.     Plaintiffs reserve the right to re-define the Classes prior to notice or

class certification, and thereafter, as necessary.

## FACTS

21.     As healthcare information technology firm, Defendant provides

training and support to healthcare facilities in connection with the implementation

of new electronic recordkeeping systems.

22.     Defendant employs consultants, such as Plaintiffs, who perform such

training and support services throughout the United States.

23.     Defendant's financial results are significantly driven by the number of

consultants performing training and support services for Defendant's customers, and

the fees that Defendant charges the customers for these services.

24.     Between September 2016 and February 2018, Plaintiff Kim was assigned by DMI to provide educational and support services to healthcare staff at hospitals in Arizona, Massachusetts, Missouri, Illinois, and South Carolina.

25.     Between September 2016 and February 2018, Plaintiff Rollins was assigned by DMI to provide educational and support services to healthcare staff at hospitals in Arizona, Missouri, and Illinois.

26.     Plaintiffs were classified by Defendant as independent contractors and were paid a set hourly rate for all hours worked. Although they routinely worked more than forty hours a week, they did not receive overtime for hours worked in excess of forty a week.

**Plaintiffs and Class Members are Employees as a Matter of Economic Reality**

27.     Work performed by Plaintiffs and Class Members is an integral part of Defendant's business. Defendant is in the business of providing information technology educational services to the healthcare industry. Plaintiffs and Class Members provide support and training to Defendant's clients in connection with the implementation of electronic recordkeeping systems.

28.     Plaintiffs' and Class Members' duties do not involve managerial work. They follow the training provided to them by Defendant in performing their work, which is basic training and support in using electronic recordkeeping systems.

29.   Plaintiffs and Class Members do not make any significant relative investments in relation to their work with Defendant. Defendant provides the training and equipment necessary to perform the functions of their work.

30.   Plaintiffs and the Class Members have little or no opportunity to experience a profit or loss related to their employment. Defendant pays Plaintiffs and the Class Members at a set hourly rate. Plaintiffs and the Class Members do not share in Defendant's monetary success; their income from their work is limited to their hourly rate.

31.   Plaintiffs' and Class Members' work does not require special skills, judgment or initiative. Defendant provides training to Plaintiffs and Class Members, which they in turn use to provide training and support to Defendant's clients.

32.   Plaintiffs and Class Members are economically dependent on Defendants. Plaintiffs and Class Members are entirely dependent upon Defendant for their business, as they are not permitted to perform services for any other company during their time working for Defendant.

33.   Plaintiffs and Class Members are not customarily engaged in an independently established trade, occupation, profession or business.

34.   Plaintiffs and Class Members typically enter into successive projects for Defendant.

35.     Plaintiffs and Class Members have little or no authority to refuse or negotiate Defendants' rules and policies; they must comply or risk discipline and/or termination.

36.     Defendant instructs Plaintiffs and Class Members concerning how to do their work and Defendant dictates the details of the performance of their jobs. For example:

a.     Defendant, not Plaintiffs or Class Members, conducts all of the billing and invoicing to Defendant's clients for the work. Defendant bills the third-party customers directly;

b.     Plaintiffs and Class Members have no control over what prices to charge, or the scheduling of shifts. All negotiations over the cost of the work are done directly between Defendant and the third-party client;

c.     Defendant requires Plaintiffs and Class Members to work the entire project from inception to conclusion;

d.     Defendant provides all training needed for Plaintiffs and Class Members to perform their work; and

e.     Defendant requires Plaintiffs and Class Members to perform in accordance with Defendant's policies, manuals, standard operating procedures and the third-party client's requirements.

37.     Plaintiffs and Class Members often work approximately twelve (12) hours per day, seven (7) days per week during their project assignments for Defendant.

38.     Plaintiffs and Class Members have to request Defendant's approval for time off. Defendant have the discretion to grant or deny such requests.

**Plaintiff and Class Members are not Exempt Employees Under the FLSA**

39.     Plaintiffs and Class Members provide support and training to hospital staff in connection with electronic recordkeeping systems. Plaintiffs have no specialized training or certification in computer programming, software documentation and analysis, or testing of computer systems or programs.

40.     Plaintiffs and Class Members were not working as, nor were they similarly skilled as, computer systems analysts, computer programmers, or software engineers, as defined in 29 C.F.R. § 541.400(a).

41.     Plaintiffs' and Class Members' primary duties consisted of training and aiding healthcare staff with using the new recordkeeping software. This type of user support is also known as "at the elbow." Plaintiffs' and Class Members' primary duties did not include the higher skills of the "application of systems analysis techniques and procedures," pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiffs and Class Members did not analyze, consult or determine hardware, software programs or any system functional specifications for Defendant's clients. *See id.*

42.    Plaintiffs and Class Members did not consult with Defendant's customers to determine or recommend hardware specifications. Plaintiffs and Class Members did not design, develop, document, analyze, create, test or modify a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2).

43.    While Plaintiffs' and Class Members' work involved the use of computers, they were not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiffs and Class Members provided support and training in using electronic recordkeeping systems to Defendants' clients.

44.    Plaintiffs' and the Class Members' work for Defendant does not require that they hold a valid license or certificate permitting the practice of medicine.

45.    Plaintiffs' and the Class Members' are not engaged in the practice of medicine while performing their job duties for Defendant.

**Plaintiff and Class Members Routinely Worked in Excess of 40 Hours a Week**

46.    Plaintiffs and Class Members routinely worked in excess of forty (40) hours per workweek, but were not paid overtime compensation as required by the FLSA.

47.    Plaintiffs and Class Members were paid only a straight hourly rate.

48.     Plaintiffs and Class Members were often required to work 12-hour shifts, 7 days a week, during their project assignments with Defendant.

49.     Plaintiffs and Class Members were not paid on a salary basis.

**Defendant Willfully Violated the FLSA**

50.     Defendant had no reasonable basis to believe that Plaintiffs and the members of the FLSA Collective were exempt from the requirements of the FLSA. Rather, Defendant either knew or acted with reckless disregard of clearly applicable FLSA provisions in classifying Plaintiffs and the FLSA Collective Members as independent contractors. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendant's actions and/or failures to act, including the following:

a.  At all times relevant hereto, Defendant maintained payroll records which reflected the fact that Plaintiffs and the FLSA Collective did, in fact, regularly work in excess of 40 hours per week, and thus, Defendant had actual knowledge that Plaintiffs and the FLSA Collective Members worked overtime;

b.  At all times relevant hereto, Defendant knew that it did not pay Plaintiffs and the FLSA Collective Members one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

c.  As evidenced by its own job offer letters and training materials for

consultants, at all times relevant hereto, Defendant was aware of the nature of the work performed by consultants, and, in particular, that such individuals worked exclusively at-the-elbow of healthcare workers employed by Defendant's clients, providing basic training and support;

d. As evidenced by its own job offer letters and training materials for consultants, Defendant knew and understood that it was subject to the wage requirements of the FLSA as an "employer" under 29 U.S.C. § 203(d).

e. At all times relevant hereto, Defendant was aware that its consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1); or (iii) the design, development, analysis, creation, testing or modification of a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2);

f. Defendant lacked any reasonable or good faith basis to believe that its consultants fell within any exemption from the overtime requirements of the FLSA. Rather, Defendant deliberately misclassified its consultants as exempt from the provisions of the FLSA in order to avoid

paying them overtime compensation to which they were entitled;

g. At all times relevant hereto, Defendant was aware that it would (and, in fact did) benefit financially by failing to pay Plaintiff and the FLSA Collective one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week; and

h. Thus, Defendant had (and has) a strong financial motive to violate the requirements of the FLSA by misclassifying tits consultants as independent contractors.

51.   Based upon the foregoing, Defendant was cognizant that, or recklessly disregarded whether, its conduct violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

52.   Plaintiffs bring Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

53.   Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

54.   Plaintiffs and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Defendant's common business and compensation practices as described herein, and, as a result of such practices, have not been paid the legally mandated overtime compensation for hours worked over forty (40) during the

workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common misclassification, compensation and payroll practices.

55.   The FLSA requires non-exempt hourly employees to be compensated at a rate of 1.5 times the regular hourly rate for all hours worked over 40 in a week.

56.   Defendant misclassified Plaintiffs and FLSA Collective Members as independent contractors and failed to provide them overtime compensation for hours worked in excess of 40 a week.

57.   The similarly situated employees are known to Defendant, are readily identifiable, and can easily be located through Defendant's business and human resources records.

58.   Defendant employs many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## MISSOURI CLASS ACTION ALLEGATIONS

59.   Plaintiffs bring Count II of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Missouri Class defined above.

60.     The members of the Missouri Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Missouri Class.

61.     Plaintiffs will fairly and adequately represent and protect the interests of the Missouri Class because there is no conflict between the claims of Plaintiffs and those of the Missouri Class, and Plaintiffs' claims are typical of the claims of the Missouri Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

62.     There are questions of law and fact common to the proposed Missouri Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendant has violated and continues to violate Missouri law through its policy or practice of classifying consultants as independent contractors.

63.     Plaintiffs' claims are typical of the claims of the Missouri Class Members in the following ways, without limitation: (a) Plaintiffs are members of the Missouri Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Missouri Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Missouri Class and involve similar factual circumstances; (d) there are no conflicts

between the interests of Plaintiffs and the Missouri Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Missouri Class Members.

64.   Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Missouri Class predominate over any questions affecting only individual Class Members.

65.   Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Missouri Class Members are readily identifiable from Defendant's own records. Prosecution of separate actions by individual members of the Missouri Class would create the risk of inconsistent or varying adjudications with respect to individual Missouri Class Members that would establish incompatible standards of conduct for Defendant.

66.   A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts

at stake for many of the Missouri Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendant.

67.    Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Missouri Class. Plaintiffs envision no difficulty in the management of this action as a class action.

## ILLINOIS CLASS ACTION ALLEGATIONS

68.    Plaintiffs bring Count III of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Illinois Class defined above.

69.    The members of the Illinois Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Illinois Class.

70.    Plaintiffs will fairly and adequately represent and protect the interests of the Illinois Class because there is no conflict between the claims of Plaintiffs and those of the Illinois Class, and Plaintiffs' claims are typical of the claims of the Illinois Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

71.    There are questions of law and fact common to the proposed Illinois Class, which predominate over any questions affecting only individual Class

Members, including, without limitation, whether Defendant has violated and continues to violate Illinois law through its policy or practice of classifying consultants as independent contractors.

72.     Plaintiffs' claims are typical of the claims of the Illinois Class Members in the following ways, without limitation: (a) Plaintiffs are members of the Illinois Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Illinois Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Illinois Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Illinois Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Illinois Class Members.

73.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Illinois Class predominate over any questions affecting only individual Class Members.

74.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its

maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Illinois Class Members are readily identifiable from Defendant's own records. Prosecution of separate actions by individual members of the Illinois Class would create the risk of inconsistent or varying adjudications with respect to individual Illinois Class Members that would establish incompatible standards of conduct for Defendant.

75.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Illinois Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendant.

76.     Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Illinois Class. Plaintiffs envision no difficulty in the management of this action as a class action.

## **MASSACHUSETTS CLASS ACTION ALLEGATIONS**

77.     Plaintiff Kim brings Count IV of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Massachusetts Class defined above.

78.     The members of the Massachusetts Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Massachusetts Class.

79.     Plaintiff Kim will fairly and adequately represent and protect the

interests of the Massachusetts Class because there is no conflict between the claims of Plaintiff Kim and those of the Massachusetts Class, and Plaintiff's claims are typical of the claims of the Massachusetts Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

80.    There are questions of law and fact common to the proposed Massachusetts Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendant has violated and continues to violate Massachusetts law through its policy or practice of classifying consultants as independent contractors.

81.    Plaintiff Kim's claims are typical of the claims of the Massachusetts Class Members in the following ways, without limitation: (a) Plaintiff Kim is a member of the Massachusetts Class; (b) Plaintiff Kim's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Massachusetts Class; (c) Plaintiff Kim's claims are based on the same legal and remedial theories as those of the Massachusetts Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Kim and the Massachusetts Class Members; and (e) the injuries suffered by Plaintiff Kim are similar to the injuries suffered by the Massachusetts Class Members.

82.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because

questions of law and fact common to the Massachusetts Class predominate over any questions affecting only individual Class Members.

83.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Massachusetts Class Members are readily identifiable from Defendant's own records. Prosecution of separate actions by individual members of the Massachusetts Class would create the risk of inconsistent or varying adjudications with respect to individual Massachusetts Class Members that would establish incompatible standards of conduct for Defendant.

84.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Massachusetts Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendant.

85.     Without a class action, Defendant will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff Kim and the

Massachusetts Class. Plaintiff Kim envisions no difficulty in the management of this action as a class action.

## COUNT I
### FLSA – Overtime Wages
### <u>(On Behalf of Plaintiffs and the FLSA Collective)</u>

86. All previous paragraphs are incorporated as though fully set forth herein.

87. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

88. Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

89. At all relevant times, Defendant has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

90. During all relevant times, Plaintiffs and the FLSA Collective Members have been covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

91. Plaintiffs and the FLSA Collective Members are not exempt from the requirements of the FLSA.

92. Plaintiffs and the FLSA Collective Members are entitled to be paid

overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

93.    Defendant, pursuant to its policies and practices, failed and refused to pay overtime compensation to Plaintiffs and the FLSA Collective members for their overtime hours worked by misclassifying Plaintiffs and the FLSA Collective as independent contractors.

94.    Defendant knowingly failed to compensate Plaintiffs and the FLSA Collective Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

95.    In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

96.    In violating the FLSA, on information and belief, Defendant did not have any good faith basis to rely on any legal opinion or advice to the contrary.

## COUNT II
### Violation of Missouri Minimum Wage law
### (On Behalf of Plaintiffs and the Missouri Class)

97.    All previous paragraphs are incorporated as though fully set forth herein.

98.    The Missouri Minimum Wage Law ("MMWL") requires that covered employees be compensated for all hours worked in excess of forty (40) hours per

week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* MO Rev Stat § 290.505.

99. DMI is subject to the overtime requirements of the MMWL because DMI is an employer under MO Rev Stat § 285.525.

100. During all relevant times, Plaintiffs and the Missouri Class members were covered employees entitled to the above-described MMWL's protections. *See* MO Rev Stat § 285.525.

101. The MMWL does not contain an exemption from overtime pay for any type of computer employees. *See* MO Rev Stat § 290.505.

102. DMI failed to compensate Plaintiffs and the Missouri Class members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of MO Rev Stat § 290.505.

103. Pursuant to MO Rev Stat § 290.527, employers, such as DMI, who fail to pay an employee wages in conformance with the MMWL shall be liable to the employee for the wages or expenses that were not paid, liquidated damages, and court costs and attorneys' fees incurred in recovering the unpaid wages.

**Count III**
**Violation of Illinois Minimum Wage Law**
**(On Behalf of Plaintiffs and the Illinois Class)**

104. All previous paragraphs are incorporated as though fully set forth herein.

105.   Pursuant to 820 ILCS 105/4a, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed.

106.   During all relevant times, DMI was an employer within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105/3.

107.   During all relevant times, Plaintiffs and the Illinois Class Members were covered employees within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105/3.

108.   DMI failed to compensate Plaintiffs and the Illinois Class Members at a rate of 1 1/2 times their regular compensation for hours worked in excess of 40 a week in violation of 820 ILCS 105/4a.

109.   Pursuant to 820 ILCS 105/12, DMI is liable to Plaintiffs and the Illinois Class Members for their unpaid overtime compensation, attorneys' fees, costs, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which the unpaid overtime wages remain unpaid.

**COUNT IV**
**Violation of Massachusetts Wage Laws**
**(On Behalf of Plaintiff Kim and the Massachusetts Class)**

110.   All previous paragraphs are incorporated as though fully set forth herein.

111.   The Massachusetts Overtime Law does not contain an exemption from overtime pay for any type of computer employees.  *See* Mass. Gen. L. c. 151 § 1A.

112.   Defendant's conduct, as set forth above, in failing to pay Plaintiff Kim and Massachusetts Class Members overtime wages which they earned as a result of their employment violates the Massachusetts overtime law, Mass. Gen. L. c. 151 §§ 1, 1A.  This claim is brought pursuant to Mass. Gen. L. c. 151 § 1B.

113.   Pursuant to the requirements of Mass. Gen. L. c. 149, § 150, Plaintiff Kim has filed an administrative complaint with the office of the Massachusetts Attorney General.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and the Classes:

a.   An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b.   Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c.   An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Missouri Class;

d.   An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Illinois Class;

e.  An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Massachusetts Class;

f.  An order appointing Plaintiffs' attorneys as Class Counsel;

g.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

h.  Liquidated damages to the fullest extent permitted under the law;

i.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

j.  Such other and further relief as this Court deems just and proper.

Dated:  April 24, 2019          Respectfully submitted,

ANDREW KIM and
JONATHAN ROLLINS, individually and
on behalf of others similarly situated,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Frances J. Hollander (P82180)
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Telephone: 734.929.4313
blanchard@bwlawonline.com
hollander@bwlawonline.com

-and-

Shanon J. Carson
Sarah R. Schalman-Bergen
Alexandra K. Piazza
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

Harold Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

*Attorneys for Plaintiffs
and the Proposed Class*